## PRUSSIAN *v.* UNITED STATES.

No. 448.   Argued January 6, 7, 1931.—Decided February 24, 1931.

*Mr. Harold L. Turk*, with whom *Messrs. Sam Rosenwein, P. F. Seigenfeld*, and *Walter B. Milkman* were on the brief, for petitioner.

*Assistant Attorney General Sisson*, with whom *Solicitor General Thacher* and *Messrs. Claude R. Branch* and *James A. Wharton*, Special Assistants to the Attorney General, *W. Marvin Smith*, and *Paul D. Miller* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

Prussian, the petitioner, was convicted in the District Court for Eastern New York of forging an endorsement purporting to be that of a payee of a government draft. At the trial, by motions to dismiss and in arrest of judgment, the sufficiency of the indictment was challenged on the ground that the offense charged was the forging of an obligation of the United States in violation of § 148 of the Criminal Code, U. S. C., Title 18, § 262, and that the endorsement alleged to have been forged was not such an obligation. The Court of Appeals for the Second Circuit affirmed the judgment, holding that the indictment sufficiently charged a violation of that section. 42 F. (2d) 854.

Certiorari was asked on the ground, among others, that the decision below conflicted with decisions of the Court of Appeals for the Eighth Circuit, *Gesell* v. *United States,* 1 F. (2d) 283; *Lewis* v. *United States,* 8 F. (2d) 849. See also *White* v. *Levine,* 40 F. (2d) 502. In accord with the decision below are *Hamil* v. *United States,* 298 Fed. 369, and *Alvarado* v. *United States,* 9 F. (2d) 385; cf. *United States* v. *Jolly,* 37 Fed. 108; *DeLemos* v. *United States,* 91 Fed. 497. Because of the conflict the petition was not opposed by the government, although it suggested that the indictment might also be upheld as charging a forgery of a " writing, for the purpose of obtaining . . . from the

United States . . . any sum of money" under § 29 of the Criminal Code, U. S. C., Title 18, § 73. This Court granted the petition, limiting review to the question whether the indictment stated an offense under the Criminal Code.

The indictment charged the forging by petitioner of " a certain obligation of the United States," described as the endorsement on a draft, drawn by a disbursing clerk of the United States Treasury upon the Treasurer of the United States and issued to the payee, "by falsely making and forging the name of the payee . . . on the back of said draft." It set out a copy of the draft and the endorsement, and alleged that together they constituted a forged obligation of the United States. The indictment also set up that the endorsement was " for the purpose of obtaining and receiving from the Treasurer of the United States a sum of money," and was stated to be in violation of both §§ 29 and 148 of the Criminal Code.

Under § 148, " whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United States " is guilty of a criminal offense. Section 147 provides: " The words ' obligation or other security of the United States ' shall be held to mean all . . . checks, or drafts for money drawn by or upon authorized officers of the United States." It is apparent that the draft drawn on the Treasurer by an authorized officer is an " obligation . . . of the United States " both in common parlance and by the express definition of § 147. But to extend the meaning of that phrase so as to embrace the endorsement on the government draft is to enlarge the statutory definition, and would be possible only by a strained construction of the language of §§ 147 and 148, inadmissible in the interpretation of criminal statutes, which must be strictly construed. See *Fasulo* v. *United States,* 272 U. S. 620; *United States* v. *Salen,* 235 U. S. 237.

The writing described in the indictment, when issued by the drawer, was a check or a draft. The added endorsement was in itself neither a check nor a draft. We need not stop to consider the argument advanced that the obligation upon the draft does not become complete until it is endorsed, see *Hamil* v. *United States, supra,* p. 371 for it overlooks the circumstance that the meaning of " obligation " in § 148 is narrowed by the definition in § 147 to specifically enumerated written instruments, including checks or drafts for money, which are complete, as such, within the statutory definition and in common understanding, at least when issued to the payee by an authorized officer of the government. The endorsement was at most the purported obligation of the endorser, not of the United States, and a purported transfer of the title of the draft to the endorsee. In neither aspect was the endorsement itself an obligation of the United States as defined by § 147, or such a part of the draft as to constitute the forging of the endorsement a forgery of the draft.

If the point were doubtful, the doubt would be resolved by a consideration of the purpose and history of the Act of which § 148 is a part, and a comparison of it with related provisions of the Criminal Code. Its purpose has been declared by this Court to be the protection of the bonds or currency of the United States, and not the punishment of any fraud or wrong on individuals. *Dunbar* v. *United States,* 156 U. S. 185, 193; cf. *United States* v. *Turner,* 7 Pet. 132, 136; *United States* v. *Stewart,* 4 Wash. C. C. 226. Section 148 is a reënactment of § 18 of the Act of April 10, 1816, 3 Stat. 266, 275, which made punishable the forgery of bills, notes, orders or checks of the Bank of the United States. The legislation took substantially its present form in the Act of June 30, 1864 (c. 172, 13 Stat. 218, 221, 222), § 10 of which (later R. S. § 5414) extended its penal provisions to the forgery of " any obli-

gation or security of the United States," and § 13 of which (later R. S. § 5413) defined obligations of the United States substantially as in the present § 147. Before the enactment of the 1864 prototype of § 148, the purpose of the 1816 act had been declared, in *United States* v. *Turner, supra,* to be " to guard the public from false and counterfeit paper, purporting on its face to be issued by the bank "; and it had been held to be inapplicable to a forged endorsement upon a genuine post note of the Bank. *United States* v. *Stewart, supra.* In the light of this history, the omission of any reference to endorsements in § 148 is not without significance; and it is worthy of note that Congress later enacted laws specifically punishing forgery of endorsements on pension checks and money orders. Title 38, U. S. C., § 128; Title 18, U. S. C., § 347.

But we think the indictment is to be sustained as charging an offense under § 29 of the Criminal Code, which punishes the forgery of " any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving . . . from the United States, or any of their officers or agents, any sum of money." The indictment alleges specifically and with certainty the forgery of the endorsement on the draft, for the purpose of obtaining a sum of money from the Treasurer of the United States, and charges a violation of § 29. We think the endorsement was a " writing " within that section. Its language is " comprehensive" and " all-embracing." Cf. *United States* v. *Davis,* 231 U. S. 183, 188. The writings enumerated have no common characteristic from which a purpose may be inferred to restrict the statute to any particular class of writings. The addition of " other writing " to the enumeration was therefore not for the purpose of including writings of a limited class, but rather of extending the penal provisions of the statute to all writings of every class if forged for the purpose of

obtaining money from an officer of the United States. See *Howgate* v. *United States*, 7 App. D. C. 217, 232, 233; cf. *United States* v. *Lawrence*, 13 Blatch. 211. It has been generally assumed by the lower federal courts that § 29 covers the forging of an endorsement. *United States* v. *Winters*, 5 F. (2d) 321; *Gesell* v. *United States, supra,* pp. 287, 288; *White* v. *Levine, supra; Bailey* v. *United States*, 13 F. (2d) 325; *Lewis* v. *United States, supra;* cf. *United States* v. *Albert*, 45 Fed. 552; *DeLemos* v. *United States, supra.* But see, contra, *Hamil* v. *United States, supra,* p. 372; cf. *United States* v. *Wilson*, Fed. Cas. No. 16,732.

Petitioner asserts that the indictment is defective in that it does not charge that the forgery was with intent to defraud the United States. See *White* v. *Levine, supra,* p. 503. No such averment is required by the language of § 29 relating to forged endorsements. Other provisions of § 29 punish the uttering of a forged writing, or presenting any such writing to an officer of the United States in support of any claim, " with intent to defraud the United States." But the present indictment is not under either of those provisions. The charge is forgery of the endorsement, which is punishable by the different provision, now in question, if committed merely " for the purpose of obtaining or receiving " from an officer or agent of the United States any sum of money. This imports an intent to defraud the United States, which the indictment sufficiently charges in the language of the statute.

Nor is the present indictment defective, as is urged, because its material allegations are uncertain or repugnant. The accused was left in no uncertainty that he was charged with only a single act, that of forging the endorsement for the specified purpose. The judgment here would constitute an unmistakable bar to any future prosecution for the same offense. The validity of the indictment is therefore not affected by the fact that the pleader,

through excess of caution, has mistakenly stated the act
to be a violation of both § 148 and § 29.   See *Williams* v.
*United States,* 168 U. S. 382.

*Affirmed.*