James Colby **DANIELSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18121.

United States Court of Appeals Ninth Circuit.

July 25, 1963.

---

4. The brief of the appellant incorrectly cites as authority the Federal Rules of Civil Procedure.

Arthur H. Tibbits, and J. Albert Hutchinson, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before POPE, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

James Colby Danielson, appellant herein, Arthur James Yee and Joe Waugh, Jr., were charged in the first count of an indictment with having conspired in violation of 18 U.S.C. § 371 to commit offenses against the laws of the United States in that—

"they conspired in violation of Section 495, Title 18, United States Code, to knowingly falsely make, forge and counterfeit and knowingly utter and publish as true, with the intent to defraud the United States of America, 171 United States Savings Bonds * * *, for the purpose of obtaining and receiving from the United States and its officers and agents a sum of money."

The second count charged that Yee alone did—

> "knowingly, falsely make, forge and counterfeit writings on eight United States Savings Bonds, to-wit, * * * by writing the name of the registered owner on each bond on the reverse side of each bond herein without the consent of said registered owner, for the purpose of obtaining and receiving from the United States * * * a sum of money * * *."

Yee pleaded guilty to the charge contained in the first count of the indictment and the second count was dismissed as to him.

Danielson and Waugh pleaded not guilty to the first count, were tried together and were found guilty by a jury verdict.[1]

We have jurisdiction of Danielson's timely appeal under the provisions of 28 U.S.C. § 1291. Waugh did not appeal.

Appellant specifies several errors on appeal, only a few of which we find it necessary to consider. His first contention is that the indictment, quoted in pertinent part above, does not charge any offense against the United States, because it mingles the language of the first two paragraphs of section 495[2] and completely omits an essential element of one offense, i.e., forgery to enable another to receive a sum of money from the United States. Appellant has refer-

ence to the fact that a requisite element of the offense of forgery under 18 U.S.C. § 495 is "the purpose of obtaining or receiving, *or of enabling any other person, either directly or indirectly to obtain or receive* from the United States or any officers or agents thereof, any sum of money," whereas such a purpose is not a requisite for the uttering offense under section 495, which requires only an "intent to defraud the United States." (Emphasis supplied.) The indictment contains allegations as to both types of intent (excepting the italicized phrase), but does not indicate which type of intent is applicable to forgery and which to uttering.

In charging a conspiracy to commit an offense, however, it is not the law that all of the elements of the offense be charged with technical precision.[3] The gist of the offense is the conspiracy and only "certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit,"[4] is necessary. Further, alleging in one count a conspiracy to commit more than one offense, e.g., forging and uttering, is not duplicitous.[5] Although it is not a model of good pleading, we feel that the allegations of the first count of the indictment were sufficient to charge a conspiracy to commit offenses under section 495 and also sufficiently apprised appellant of the offenses he allegedly conspired

---

1. Danielson was sentenced to five years imprisonment and Waugh received a $1,000 fine.

2. 18 U.S.C. § 495 provides in pertinent part as follows:
   "Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or
   "Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

* * * * *
   "Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

3. Medrano v. United States, 285 F.2d 23 (9th Cir. 1960); Williamson v. United States, 310 F.2d 192 (9th Cir. 1962); Stein v. United States, 313 F.2d 518 (9th Cir. 1962).

4. Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

5. See Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), in which the Supreme Court stated that such a count is not duplicitous, since "conspiracy is the crime, and that is one, however diverse its objects."

with others to commit. The absence of the phrase italicized above, appearing as it does in the disjunctive in the statute, did not affect the validity of the indictment.

■ Although the indictment was not fatally defective, we agree with appellant that the evidence in the record is insufficient to prove the particular conspiracy that was charged. Appellant was charged with having conspired with Waugh and Yee to forge and utter as true United States Savings Bonds. The evidence reveals, however, that the bonds were valid bonds which had been stolen from their registered owner (who at all times was entitled to receive the value thereof) and

that Arthur James Yee signed the rightful owner's name on the reverse side of the bonds in the place provided therefor.[6] A distinction has been recognized in the cases between the forgery of an obligation or security, such as a bond, and' the forgery of endorsements or other writings upon genuine obligations or securities.[7] Yee was in fact charged in the second count of the indictment with having forged writings on the bonds and not with having forged the bonds. While perhaps it could be argued that appellant could have been charged with a conspiracy to commit the offense charged' against Yee in the second count, he was not so charged.[8] We do not feel that the

6. On the reverse side of the bonds the following instructions were printed concerning how the owner of the bond was to receive payment:

"I am the owner of this bond and hereby request payment. I do not hold a United States Bond of Series E originally issued to me in excess of the amount fixed by regulation.

". . . . . . . . . . . . . . . . . . . . . . . .

"Sign in ink in presence of paying agent or certifying officer."

The above had to be signed in the presence of a certifying officer who is required then to certify as follows:

"I certify that the above named person whose identity is well known or proved to me, signed the above request in my presence acknowledging the same to be his free act and deed.

". . . . . . . . . . . . . . . . . . . . . . . .

"Signature of officer

". . . . . . . . . . . . . . . . . . . . . . .;

"Designation of officer"

Also there appeared the following payment instructions on the reverse side of the bond:

"Payment Instructions

"To receive payment the registered owner or co-owner may personally present this bond * * * to any bank * * * and on proper identification and signing the request for payment may receive immediate payment."

"Terms and Conditions

"This bond * * * is payable at face value * * * but only upon presentation and surrender of the bond with request for payment duly signed or executed in accordance with the applicable regulation."

7. See, e.g., Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610

(1931) (in which the Supreme Court held that a forged endorsement of the payee's name on a genuine government draft is not a forgery of an "obligation of the United States," the endorsement being at most the purported obligation of the endorser and not an obligation of the United States); Gesell v. United States, 1 F.2d 283 (8th Cir. 1924), (in which it was held by the Eighth Circuit to be a fatal variance to charge one with possessing and uttering a forged obligation or security of the United States and prove the forgery of an endorsement or assignment of genuine obligations of the United States); United States v. Albert, 45 F. 552 (Cir.Ct.Fla.1891), (where it was held that evidence· that a defendant negotiated a genuine check drawn by an authorized officer of the United States upon which there was the forged endorsement of the payee was insufficient to sustain a verdict of guilty under an indictment charging the defendant with uttering a false, forged, and altered United States treasury warrant); Rogers v. United States, 304 F.2d 520, 523 (5th Cir. 1962) (dissenting opinion). Cf., United States v. Brown, 246 F.2d 541 (2nd Cir. 1957); United States v. Henderson, 298 F.2d 522, 526 (7th Cir. 1962).

8. See Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 352 (1960), concerning the substantial right of a defendant to be tried only on charges. presented in the indictment; see also Hendrey v. United States, 233 F. 5 (C.A. Tenn. 1916), (in which the court stated' that "it cannot be permitted that any respondent shall be charged with one crime and convicted of another merely because the latter is developable out of the proof which fails to show the crime charged."

variance in this case can be dismissed as harmless error.

■■ Even assuming for the moment that the evidence had been sufficient to prove the particular conspiracy that was charged in the indictment, we would be forced to reverse on the ground that the instructions given by the district court on the element of intent were prejudicially erroneous.[9] In this regard, it is well settled that at least that degree of criminal intent necessary under the substantive offense must be proved to sustain a conviction of conspiracy to commit that offense.[10] As noted earlier, an essential element of the forgery offense under section 495 is "the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money." Although the district court mentioned this as an element of the substantive offense of forgery, in instructing the jury as to the elements of a conspiracy to forge and utter, the court stated:

> "Intent to defraud is the essence of the offense with which the defendants are charged with conspiracy to commit; that is, forging and uttering United States Treasury bonds. The intent to defraud is the essence of that offense."

While an intent to defraud the United States would be an essential element of a conspiracy to utter a forged instrument, a mere showing of an intent to defraud without evidence that the purpose was to obtain or enable others to obtain a sum of money from the United States would not suffice, in our view, for the purpose of showing a conspiracy to forge. Since a general verdict was rendered, it is impossible for us to tell what evidence the jury linked together in reaching its verdict. Accordingly the verdict can not stand.

The judgment of the district court is reversed.

---

9. At the conclusion of the instructions given by the court, counsel for Waugh objected to several of the instructions that had been given and to the refusal to give certain requested instructions and appellant's counsel joined in these objections. An objection was made to the instructions given on the element of intent, but the purport of the objections is not entirely clear. Assuming, however, that Rule 30, Federal Rules of Criminal Procedure, was not complied with insofar as the instruction to be next discussed is concerned, we nevertheless feel that we must in this case consider the matter as plain error under Rule 52(b).

10. Ingram v. United States, 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). See also, Developments in the Law of Criminal Conspiracy, 72 Harv.L.Rev. 920, 939–940 (1959).